JMM:MPC

**MJ-12-1106**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 07 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

BINOD SINGH and
STEVEN CHEN,

               Defendants.

- - - - - - - - - - - - - - - - -X

IN THE MATTER OF THE APPLICATION
FOR A SEARCH WARRANT FOR THE
PREMISES KNOWN AND DESCRIBED AS
111 BROOK STREET BAY SHORE, NEW
YORK 11706

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
SEARCH WARRANT

(T. 21, U.S.C., §
846; and Fed. R.
Crim. P. 41 )

**RECEIVED**
IN CHAMBERS OF
A. KATHLEEN TOMLINSON

★ DEC 0 6 2012 ★

TIME A.M.———————
       P.M.———————



EASTERN DISTRICT OF NEW YORK, SS:

     CHARLES K. BERNARD, being duly sworn, deposes and says

that he is a Special Agent with the United States Drug

Enforcement Administration ("DEA"), duly appointed according to

law and acting as such.

     Upon information and belief, in or about and between

October 2012 and the present, both dates being approximate and

inclusive, within the Eastern District of New York, the

defendants BINOD SINGH and STEVEN CHEN, together with others, did

knowingly and intentionally conspire to distribute and possess

with intent to distribute a Schedule II controlled substance, to

wit: oxycodone, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846)

Upon information and belief, there is probable cause to believe that there is concealed at the premises known and described as: 111 MAPLE AVE, BAY SHORE, NEW YORK, 11701 including any closed or locked containers including safes and other containers secured by locks (the "SUBJECT PREMISES"), which is located within the Eastern District of New York, certain property, namely the items listed in Attachment A all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 846.

(Fed. R. Crim. P. 41)

I.   INTRODUCTION

1.   I am a Special Agent with the DEA, currently assigned to the DEA's Tactical Diversion Squad Office Long Island District Office.  The Tactical Diversion Squad investigates the illegal distribution of prescription drugs.  As Special Agent I have also conducted investigations of narcotics offenses and health care fraud matters, and have conducted or participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants, and reviews of taped conversations and drug records.  Through my training, education and experience, I have become familiar with

-2-

the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, and the methods by which individuals conceal and secure the proceeds of such drug activity.

     2.   I submit this Affidavit in support of the government's arrest of BINOD SINGH and STEVEN CHEN and in support of the application for a search warrant. Specifically, the search warrant seeks to enter and search the SUBJECT PREMISES and to seize the items set forth below in ATTACHMENT A, all of which constitute evidence, fruits and/or instrumentalities of violations of Title 21, United States Code, Section 846.

     3.   The facts contained in this Affidavit are based in part upon personal knowledge, and in part upon information learned from other sources, such as other law enforcement personnel, confidential sources, eyewitnesses, surveillance, audio and video recordings, physical evidence and other documents recovered and gathered during the course of the investigation, as well as on my experience and background as a Special Agent. Where conversations, statements and the actions of others are related herein, they are related in substance and in part, unless otherwise indicated. Because this Affidavit is submitted for the limited purpose of establishing probable cause to arrest the defendants BINOD SINGH and STEVEN CHEN and search the SUBJECT PREMISES, I have not set forth every fact that I have learned over the course of this investigation.

4.     Based on my training and experience, including the investigation of diversion of legitimately manufactured pharmaceuticals to unauthorized individuals, I am familiar with various types of legitimate controlled substances in Schedule II of 21 U.S.C. § 812 that are often distributed illegally.

5.     Oxycodone is the generic name for a synthetic opioid analgesic, or pain-killer. This drug is listed as a Schedule II controlled substance.  21 C.F.R. § 1308.12(b)(1)(xiii) and (xiv).

II.   DESCRIPTION OF THE SUBJECT PREMISES

6.     During the course of this investigation, I have observed the SUBJECT PREMISES, including the surrounding area.  I have also spoken with other witnesses who have entered the SUBJECT PREMISES and consensually recorded the activities in the SUBJECT PREMISES.  The SUBJECT PREMISES light green two story center hall colonial residential home. As you enter the front door there is a bathroom straight ahead and to the right there is an open layout kitchen/dining area.  In the right corner of the open layout area is a computer and printer.  In the center of the open layout room is a dining table.  A photograph depicting the outside of the building housing the SUBJECT PREMISES is attached hereto as Attachment B.

-4-

III. <u>PROBABLE CAUSE TO ARREST THE DEFENDANTS AND SEARCH THE SUBJECT PREMISES</u>

      7.  The defendant BINOD SINGH was a medical doctor who was licensed by the State of New York.  In 2010, SINGH was convicted in Suffolk County for criminal sale of a controlled substance and was released from custody in October 2012. Since in or about October 2012, SINGH has been the subject of a subsequent DEA investigation for suspected narcotics trafficking. Specifically, the government's investigation has established that SINGH together with others is distributing and possessing with intent to distribute narcotics, including oxycodone from the SUBJECT PREMISES.

      8.  In December 2012, law enforcement officers received information from a confidential source (hereinafter "CS-1") that the defendant BINOD SINGH was using the SUBJECT PREMISES to distribute prescriptions for oxycodone to various "patients" in the name of other doctors.  According to CS-1, SINGH would provide fraudulent prescriptions written on authentic prescriptions paper. SINGH would forge the prescriptions using the name and DEA number belonging to actual physicians. SINGH would fill in the fraudulent patient information provided in advance by CS-1.  SINGH would only accept cash in exchange for prescriptions and charged between $1,200 and $1,800 for prescriptions for oxycodone.

      9.  According to CS-1 he/she received from the defendant BINOD SINGH's approximately eight prescriptions for

oxycodone in the names of the "patients" provided by CS-1. Each prescription was for oxycodone 30mg tablets either in 120 or 180 count prescriptions.

10.   On or about December 6, 2012, the defendant BINOD SINGH sent a text message to CS-1 requesting additional names of "patients" so SINGH could sell the prescriptions CS-1.   CS-1 provided the names and biographical information to SINGH via telephone.

11.   On or about December 7, 2012, CS-1 received confirmation from the defendant BINOD SINGH that the prescriptions were ready for pick up and that CS-1 should come to the SUBJECT PREMISES to pick them up. CS-1 went to the SUBJECT PREMISES and consensually recorded the activities within the SUBJECT PREMISES.   Specifically, CS-1 paid SINGH cash in exchange for two prescriptions in the names CS-1 gave to SINGH. Additionally, CS-1 observed one other individual purchase forged prescriptions from SINGH.   CS-1 also observed the defendant STEVEN CHEN at the SUBJECT PREMISES.   CS-1 observed CHEN printing the prescriptions off the computer at the direction of SINGH. CS-1 also observed approximately $100,000 in cash on the kitchen table. SINGH warned all present that if anyone was wearing a wire, he would kill them.

12.   Based on my training and experience, and information obtained from other special agents, I know that

individuals who deal in the illegal distribution of controlled substances typically keep books and records, including, but not limited to the items listed in Attachment A. Such business records are often stored on computer disks, hard drives, and network systems.

IV. <u>ITEMS LIKELY TO BE FOUND AT THE SUBJECT PREMISES</u>

13. Based on the foregoing, my involvement in this investigation, and my training and experience, it is my belief that there is probable cause that the SUBJECT PREMISES has been and is continuing to be used to store instrumentalities, evidence and fruits of violations of Title 21, United States Code, Section 841, including, but not limited to, the items listed in ATTACHMENT A.

V. <u>PROCEDURES REGARDING THE SEIZURE AND SEARCHING OF COMPUTER SYSTEMS</u>

14. Based on my own experience and consultation with other law enforcement agents and detectives who have been involved in the search of computers and retrieval of data from computer systems and related peripherals, and computer media, there are several reasons why a complete search and seizure of information from computers often requires seizure of all electronic storage devices, as well as all related peripherals, to permit a thorough search later by qualified computer experts in a laboratory or other controlled environment:

a. Computer storage devices, such as hard disks,

diskettes, tapes, laser disks, and Bernoulli drives, can store the equivalent of hundreds of thousands of pages of information. Additionally, when an individual seeks to conceal information that may constitute criminal evidence, that individual may store the information in random order with deceptive file names. As a result, it may be necessary for law enforcement authorities performing a search to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This review and sorting process can take weeks or months, depending on the volume of data stored, and would be impossible to attempt during a search on site; and

      b.   Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even those who are computer experts to specialize in some systems and applications. It is difficult to know before a search what type of hardware and software are present and therefore which experts will be required to analyze the subject system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external

-8-

sources or from destructive code imbedded in the system as a
booby trap), a controlled environment is essential to its
complete and accurate analysis.

　　　　15.  Based on my own experience and my consultation
with other law enforcement agents and detectives who have been
involved in computer searches, searching computerized information
for evidence or instrumentalities of a crime often requires the
seizure of all of a computer system's input and output peripheral
devices, related software, documentation, and data security
devices (including passwords) so that a qualified computer expert
can accurately retrieve the system's data in a laboratory or
other controlled environment.  There are several reasons that
compel this conclusion:  The peripheral devices that allow users
to enter or retrieve data from the storage devices vary widely in
their compatibility with other hardware and software.  Many
system storage devices require particular input/output devices in
order to read the data on the system.  It is important that the
analyst be able to properly re-configure the system as it now
operates in order to accurately retrieve the evidence listed
above.  In addition, the analyst needs the relevant system
software (operating systems, interfaces, and hardware drivers)
and any applications software which may have been used to create
the data (whether stored on hard drives or on external media), as

well as all related instruction manuals or other documentation
and data security devices; and

In order to fully retrieve data from a computer system,
the analyst also needs all magnetic storage devices, as well as
the central processing unit ("CPU").  In cases like the instant
one where the evidence consists partly of image files, the
monitor and printer are also essential to show the nature and
quality of the graphic images which the system could produce.
Further, the analyst again needs all the system software
(operating systems or interfaces, and hardware drivers) and any
applications software which may have been used to create the data
(whether stored on hard drives or on external media) for proper
data retrieval.

16.  Based on my training, experience, participation in
other investigations concerning narcotics trafficking, and
discussions with other law enforcement agents, I know that
individuals who illegally distribute and dispense narcotics
routinely secret and store items of the sort described in
ATTACHMENT A in secure locations such as safety deposit boxes,
suitcases, safes, key-lock strong boxes, and other types of
locked or closed containers in an effort to prevent the discovery
or theft of said items.  This warrant and this search procedure
specifically include the search of any closed containers or
cabinets, locked or unlocked, found within the SUBJECT PREMISES.

-10-

VI.  CONCLUSION

        WHEREFORE, I respectfully request that the defendants
BINOD SINGH and STEVEN CHEN be dealt with according to law and
that a search warrant be issued allowing law enforcement officers
to enter and search the SUBJECT PREMISES and to seize the items
set forth in ATTACHMENT A to this Affidavit, all of which
constitute evidence, fruits, and/or instrumentalities of
violations of Title 21, United States Code, Section 841.


                                    _____
                                    Special Agent Charles K. Bernard
                                    Drug Enforcement Administration


Sworn to before me this
 7th day of December, 2012

_____
HON. A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# ATTACHMENT A

Evidence, instrumentalities and fruits of violations of Title 21, United States Code, Section 841, to be seized from the premises known and described as 111 BROOK STREET BAY SHORE, NEW YORK 11706, and any locked or closed containers therein: a) financial documents, including, but not limited to, cash, money orders, checks, bank statements, credit card account records, deposit receipts, wired funds transfer records, currency transactions records, and any other documents relating directly or indirectly to manufacture, purchase, transportation, sale or distribution of controlled substances; (b) records, books, logs, ledgers, lists, and any other documents, either written or stored electronically on computers or other electronic media, revealing information relating directly or indirectly to manufacture, purchase, transportation, sale or distribution of controlled substances; (c) records, documents, programs, applications, and materials, including copies of software, data, and information; computer tools and programs; computerized logs; electronic

-12-

organizers, including personal data assistants; and account names; (d) central processing units; external and internal drives; external and internal storage equipment or media; computer software; computerized data storage devices, including data stored on hard disks or floppy disks, computer printers or computer programs; combination scanner/printers; printer ink; and computer or data processing software or data, including: hard disks, floppy disks, CD-ROMs, Zip disks, modems and magnetic tapes which could contain or be used to transmit or store any of the foregoing records, documents, and materials; (e) written and electronic address and/or telephone directories, palm pilots, rolodexes, papers reflecting names, addresses, email addresses, telephone and/or pager numbers of persons and entities including, but not limited to, the named target; (f) pagers, cellular telephones and computer memory media capable of the storage and retrieval of telephone numbers, names and/or addresses; (g) books, papers, records, receipts, bank statements and records, money drafts, money orders, cashier's checks, Western Union transfers, and other items evidencing the obtaining, transfer or concealment of assets or other expenditure of United States currency, shipping documents, including but not limited to, airway bills, invoices and records of shipment, reflecting receipt of shipments of controlled substances, evidence of the ownership and/or other papers recording the acquisition of automobiles, vehicles, boats, real estate, stocks and bonds,

furs, gems, precious metals and collector's coins; (h)
photographs of assets, controlled substances and associates; (i)
tickets, papers, itineraries, schedules, notes, receipts and
other items relating to domestic or foreign travel; (j) utility
and telephone bills, canceled envelopes, keys and other indicia
of occupancy, residency or ownership of the searched premises or
other premises or storage locations; and (k) controlled
substances, including, but not limited to oxycodone; and (l)
prescription pads, all of which constitute evidence, fruits and
instrumentalities of violations of Title 21, United States Code,
Section 841.

# ATTACHMENT   B

